UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>TINA DOMINGUEZ,<br><br>　　　　　　　　　　Defendant. | Case Nos.: 17cr336-LAB-7 and 18cv1567-LAB<br><br>**ORDER DENYING PETITION UNDER 28 U.S.C. § 2255** |

Defendant Tina Dominguez pled guilty to conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). On August 22, 2017, the Court sentenced her to 120 months' imprisonment, followed by five years' supervised release. (*See* Docket no. 388 (Amended Judgment).)[1] She then took an appeal, but voluntarily dismissed it. (*See* Docket no. 499.)[2] Then she filed a petition to vacate her conviction and sentence under 28 U.S.C. § 2255. (Docket no. 507 (Pet.).)

/ / /

/ / /

---

[1] All docket references are to the criminal docket.
[2] Her petition inaccurately says she filed no appeal.

1

**Legal Standards**

To be entitled to a hearing on a § 2255 motion or petition, a defendant must allege specific facts which, if true, would entitle her to relief. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996). No hearing is required in order to examine vague or conclusory allegations. *Blackledge v. Allison*, 431 U.S. 63, 72–73 (1977); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). Likewise, under 28 U.S.C. § 2255(b), if the records and files and the motion itself conclusively show that the prisoner is not entitled to relief, no hearing is required.

A § 2255 petition ordinarily cannot be used to raise claims that could have been raised on appeal. *See United States v. Frady*, 456 U.S. 152, 164–65 (1982) (holding that a § 2255 motion is not a substitute for a direct appeal). There are recognized exceptions where a defendant has shown cause and prejudice, *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993), or actual innocence, *Bousley v. United States*, 523 U.S. 614 (1998), but neither applies here.

**Dominguez's Claims**

Dominguez claims her trial counsel was ineffective for four reasons:

1. Misadvising her about the sentencing range the government would seek;
2. Failing to argue that only the heroin in Dominguez's own possession should have been taken into account for plea and sentencing purposes;
3. Failing to explain adequately her eligibility for safety valve, resulting in her being subject to a mandatory minimum sentence (claim 3) and
4. Failing to request a minor role adjustment in the plea agreement.

Dominguez also argues that the Court violated Fed. R. Crim. P. 11 by advising her, in connection with a request for appointment of new counsel, that appointing new counsel would not likely change the plea deal she had been offered. She claims this resulted in her deciding not to renew her request for new counsel, and to accept the plea deal.

/ / /

Dominguez does not argue that she would have rejected the plea deal had she been advised differently. Instead, she asks the Court to permit her to withdraw her plea, set aside the conviction, and appoint new counsel to help her decide whether she should plead guilty or go to trial. She also asks that new counsel advise her whether safety valve could apply. (Pet. at 13.)

In connection with Dominguez's appeal, transcripts of key proceedings were filed in the docket. Among these is the transcript of her change of plea hearing before Magistrate Judge Karen Crawford (Docket no. 367 (Change of Plea Tr.)), where she was given appropriate warnings and advisories, and where she testified under oath about the plea agreement. Judge Crawford found that Dominguez's guilty plea was made knowingly and voluntarily, and did not result from any force, threats, or promises, other than those made in the plea agreement. (Docket no. 178, ¶ 17.) The plea agreement is also part of the record. (Docket no. 179 (Plea Agrmt.).) The Court adopted Judge Crawford's findings and recommendations, and accepted Dominguez's guilty plea. (Docket no. 237.)

Dominguez waived her right to appeal or collaterally attack "every aspect of the conviction and sentence," except on the basis of ineffective assistance of counsel. (Plea Agrmt. at 11:10–14.)

**Claim 1: Misadvice About Sentencing Range**

The plea agreement warned Dominguez that the crime she was pleading guilty to carried a maximum sentence of life in prison, and a mandatory minimum of ten years. (Plea Agrmt. at 5:1.) It warned that the sentence she would receive was completely within the Court's discretion, and the government was not making any representations about what her sentence would be. (*Id.* at 8:5–13.) The plea agreement included a promise that the parties would jointly recommend certain base offense level, specific offense characteristics, adjustments and departures (*id.* at 8:16–9:9), which included safety valve if she was qualified for it. (*Id.* at 9:4–9.) If she did not qualify for it, the agreement warned her, she could be subject to

3

a statutory mandatory minimum sentence. (*Id.* at 9:8–9.) The only reference to the sentencing range was a promise that the government would recommend that Dominguez be sentenced within whatever advisory guideline range the government recommended at sentencing. (*Id.* at 10:5–7.)

At Dominguez's change of plea hearing on April 20, 2017, she was again warned that the maximum term was life in prison, and that she faced a mandatory minimum of ten years. (Change of Plea Tr. at 4:21–5:6.) She testified that she understood this. (*id.* at 5:7–10.) She was also given advisories about the sentencing guidelines, which included a warning that the sentence imposed would be decided by the Court, and that the Court might impose the maximum sentence or a lesser sentence. (*Id.*, 5:14–21.) Dominguez testified that she discussed the sentencing guidelines with her attorney and had no questions about them. (*Id.* at 5:22–6:2.)

Dominguez also testified that she had read the entire plea agreement, discussed it with her lawyer, and understood it before signing it; that she had no questions about it; and that she was satisfied with her lawyer's services. (*Id.* at 6:20–7:16.) She testified that no one had threatened her and that no one had promised her anything other than what was in the plea agreement. (*Id.* at 7:17–23.) She also knew that the plea agreement represented the entire agreement between her and the government. (*Id.* at 7:10–13.)

In support of her petition's first claim, Dominguez contradicts her sworn testimony, asserting that she was not given time to read the plea agreement and her lawyer pressured her to sign it on the spot. (Pet. at 4.) If she did so, she now claims, her lawyer told her the government "would not seek 10 years but was offering a sentence of 3-4 years" and she signed it "only upon the representation . . . that the prosecution would only seek 3-4 years." (*Id.*) She also says she was not given a copy of the agreement (*id.*), implying that not only did she not read it fully before signing it, she also did not read it until much later.

4

At a hearing several months after her change of plea hearing, Dominguez asked the Court to appoint new counsel. She mentioned this misunderstanding and suggested she wanted to withdraw her guilty plea, and the Court discussed it with her at length. (Docket no. 478 (Appt. of Counsel Tr.) at 2:18–22; 4:11–6:23.) At the time, she had difficulty remembering who said what, and claimed that Magistrate Judge Crawford had mentioned a promise of three to four years, and a promise that she (Judge Crawford) would ask that it be respected. (*Id.* at 5:22–6:2.) The Change of Plea transcript shows this did not occur. But after prompting, Dominguez recalled that she was in fact told she faced a ten year mandatory minimum. (*Id.*, 6:3–15.)

After an inquiry, the Court found no good cause to appoint new counsel at the time. (Appt. of Counsel Tr. at 12:11–13, 22–24.) But because it was evident Dominguez was somewhat confused about the facts of her plea, the Court directed her lawyer to meet with her, and told her she could file a motion to withdraw her plea if she wanted to. (*Id.* at 12:4–10; 20–22.) The Court also advised her that if she told her lawyer she wanted to withdraw her plea, he would file a motion for her; and the Court emphasized that this was her choice, not her lawyer's. (*Id.* at 12:7–10.) She did not move to withdraw her plea, and did not mention it at sentencing. (*See* Sentencing Tr. at 8:14–9:4 (allocution, including acceptance of responsibility).) And she does not allege that she asked her counsel to file a motion to withdraw her plea, or that he failed or refused to do so.

Claims in a § 2255 petition that rest entirely on unsubstantiated allegations that directly contradict the defendant's earlier sworn statements at a plea colloquy do not require a hearing. *Muth v. Fondren*, 676 F.3d 815, 821–22 (9th Cir. 2012). Furthermore, even if Dominguez's lawyer had incorrectly told her that she would be sentenced to no more than three to four years, Judge Crawford's advisories at the change of plea hearing would have corrected such a misapprehension.

///

### Claim 2: Argument About Drug Quantity

Dominguez's sentence was based on her conspiracy to distribute at least one kilogram of heroin. (*See* Docket nos. 1 at 2:14–22 (Indictment); 362, 368 (Sentencing Summary Charts); 479 at 11:3–4 (Sentencing Tr.).) At her change of plea hearing, Dominguez testified that she conspired with others to distribute more than one kilogram of heroin. (Change of Plea Tr. at 8:2–9:2.) In particular, she testified that at least one kilogram of heroin was within the scope of her agreement with her co-conspirators, or were reasonably foreseeable to her. (*Id.*, 8:23–9:2.)

In sentencing a defendant for conspiracy to distribute drugs, the Court must find that the quantity the sentence is to be based on either fell within the scope of the defendant's agreement with co-conspirators, or was reasonably foreseeable to the defendant. *United States v. Banuelos*, 322 F.3d 700, 702 (9th Cir. 2003). The argument Dominguez suggests her lawyer should have made was baseless, and he was not ineffective for failing to make it. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance").

### Claim 3: Safety Valve

Dominguez claims that when she "signed the plea agreement she did so under the condition that she qualified for the Safety Valve." (Pet. at 6.) The plea agreement itself makes clear it was unknown whether she would qualify. (Plea Agrmt. at 9:4–9.) For the same reasons discussed in connection with advice about the sentencing range, her claim based on advice about safety valve must fail as well. At the time she pled guilty, Dominguez knew she faced a mandatory minimum of 120 months unless safety valve applied. And, at that time, she did not know whether she would be safety valve-eligible.

As part of this claim, Dominguez argues that she became ineligible for safety valve because other cases were resolved, making her cooperation meaningless.

///

Here, she appears to be confusing safety valve with substantial assistance.[3] The fact that her cooperation was not needed did not make her safety valve-ineligible. *See* USSG § 5C1.2(a)(5). Rather, she was ineligible because she had two criminal history points. *See* USSG § 5C1.2(a)(1). At the time she pled guilty, the parties had no agreement as to her criminal history category. (S*ee* Plea Agrmt. at 9:26–27.)

Assuming she had raised an argument that her counsel was ineffective for failing to obtain a downward departure for substantial assistance, such a claim would fail. She never claims anyone promised her a reduction for substantial assistance. And in any case, the government must move for a downward departure for this reason; Dominguez's lawyer was not responsible for its decision not to do so. *See United States v. Cruz-Guerrero*, 194 F.3d 1029, 131 (9th Cir. 1999). Nor could Dominguez's lawyer be responsible for failing to predict the outcome of other cases, or whether any assistance she might provide would prompt the government to make such a motion. *See Bell v. Cone*, 535 U.S. 685, 698 (2002) (holding that counsel's actions must be evaluated from their perspective at the time of their allegedly deficient performance).

**Claim 4: Minor Role**

Dominguez claims her attorney was ineffective for failing to see that a consideration of her minor role was incorporated into the plea agreement. She claims, without elaboration, that she qualified as a minor participant in the conspiracy and that her crimes were committed only to support her personal drug addiction.

---

[3] Her misunderstanding may stem from an explanation the government gave at sentencing, in which the prosecutor was discussing failed efforts to avoid application of the mandatory minimum sentence. (*See* Sentencing Tr. at 9:6–23.) He discussed both safety valve and substantial assistance, without differentiating between them. His meaning was clear to the Court, however.

The plea agreement permitted Dominguez's lawyer to argue for other reductions, and the sentencing transcript shows that he in fact made the arguments she thinks he should have made. (Sentencing Tr. at 3:7–5:8.) The fact that the government did not agree to ask for minor role was not her lawyer's fault. (*See* Sentencing Tr. at 9:19–10:4 (agreeing in part with Dominguez's lawyer's characterization of her motives, but arguing that she was an important part of the organization)).) Furthermore, because of her extensive involvement in the conspiracy (*see* Docket no. 287 (Presentence Report), ¶¶ 15–24, the Court would not have given her the benefit of minor role in any event.

**Additional Claim: Fed. R. Crim. P. 11(c)(1) Violation**

Under Rule 11(c)(1), the Court must not participate in discussions leading to plea agreements. Violation of this rule is not structural error, *United States v. Davila*, 569 U.S. 597, 611 (2013), and this provision can be waived. *United States v. Myers*, 804 F.3d 1246, 1255 (9th Cir. 2015). Because a transcript of the entire hearing is available, no evidentiary hearing is needed to confirm what took place.

The purpose of the hearing Dominguez mentions was to consider her request for new counsel. (Appt. of Counsel Tr. at 2:14–17.) But at the hearing, her counsel also said she was dissatisfied with her decision to plead guilty. (*Id.* at 2:18–23.) When the Court gave her an opportunity to speak, she argued that the plea agreement she signed did not include provisions she had been told were in it, and that she had been given promises that were not included in the agreement. (*Id.* at 4:11–5:1.)

After an inquiry, the Court found that Dominguez's counsel was performing adequately and her belief that he had refused all contact to her was mistaken. Although she initially said he refused all contact with her (Appt. of Counsel Tr. at 4:22–24), she later said he had visited her (*id.* at 5:8–10) and talked with her by phone. (*Id.* at 9:20.) For his part, he said he had had at least six contacts with her during the intervening two months, visiting her twice, calling her at least twice and

1  exchanging emails. (*Id.* at 7:22–8:25.) Although the Court found he had been
2  communicating with her, it directed him to meet with her again, which he agreed
3  to do. (*Id.* at 13:24–14:2.)

4  At the hearing, the Court repeatedly drew a sharp distinction between Dominguez's reasons for seeking appointment of new counsel, and the possibility that she might withdraw her plea. (Appt. of Counsel Tr. at 6:20–7:1; 10:10–13; 11:13–20.) The interaction Dominguez points to in support of this claim took place in connection with her request for new counsel, which is not within the scope of Fed. R. Crim. P. 11(c)(1). In fact, the Court is <u>required</u> to inquire into the defendant's reasons for seeking new counsel. *See United States v. Mendez-Sanchez*, 563 F.3d 935, 942 (9th Cir. 2009); *United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000). Here, the Court was addressing the possibility that she thought firing her lawyer would likely result in a better plea offer, and explaining that this was not an adequate reason for seeking new counsel (*id.*, 10:19–11:15)— which it was not. *See, e.g., United States v. Rivera-Sanchez*, 222 F.3d 1057, 1061 (9th Cir. 2000) (noting with approval district court's denial of request for new counsel by defendant who wanted "to see what deal the new attorney can get me").

But, the Court made clear,

> [w]hether you should be able to withdraw your plea is a completely different question, but I'm pretty confident that if that's what you want to do, [your current lawyer] can advocate for that for you. And if you want to withdraw your plea and there's good grounds for it, then I'll consider that and I may even grant it.

(*Id.* at 11:15–20.) The Court directed her lawyer to meet with her to discuss the issues she had raised. (*Id.* at 13:15–17.) If she decided to withdraw her plea, her lawyer was to file the motion for her, and she agreed to this. (*Id.* at 13:15–21.) The Court also offered to postpone sentencing, if Dominguez and her counsel needed more time to decide. (*Id.* at 14:3–6.)

/ / /

9

17cr336-LAB-7 and 18cv1567-LAB

In other words, the colloquy was aimed at whether she had shown good cause for appointment of new counsel, not whether she should withdraw her plea—which, the Court made clear, she was still free to seek leave to do.

Furthermore, Dominguez could have raised this issue on direct appeal. *See United States v. Garfield*, 987 F.2d 1424, 1426–27 (9th Cir. 1993) (considering defendant's claim that sentencing judge violated Fed. R. Crim. P. 11 by urging him not to withdraw guilty plea, and granting relief). She has not shown either cause or prejudice for her failure to do so. For example, even now she is not sure whether she wants to withdraw her plea; she therefore cannot say that the Court's alleged pressure on her prejudiced her. She may therefore not raise it via a § 2255 petition. *See Frady*, 456 U.S. at 164–65; *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir.1985).

**Conclusion and Order**

For the reasons set forth above, the record makes clear Dominguez is entitled to no relief. *See* 28 U.S.C. § 2255(b).The petition is **DENIED**.

**IT IS SO ORDERED**.

Dated: April 16, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge